The STATE of Ohio, Appellant,

v.

MALINOVSKY, Appellee.

[Cite as *State v. Malinovsky* (1991), 81 Ohio App.3d 170.]

Court of Appeals of Ohio,
Lorain County.

No. 89CA004592.

Decided Oct. 16, 1991.

*Gregory A. White,* Prosecuting Attorney, for appellant.

*Gerald M. Smith,* for appellee.

---

QUILLIN, Presiding Judge.

We are required to determine in this case whether the trial court erred when it excluded evidence against the defendant on the grounds that sufficient evidence of a conspiracy had not been introduced. We reverse.

## I

A short procedural history of the case is in order.

During its case in chief, the state appealed the evidentiary rulings now before us. The trial court ruled that the appeal was improper and ordered the state to proceed. The state refused and the court dismissed the case for want of prosecution. The state appealed. We ruled that the state was not entitled to a mid-trial appeal, and further that a re-trial would be barred by the double jeopardy doctrine.

The Supreme Court of Ohio reversed us and held that the state was entitled to a mid-trial appeal and that a re-trial would not be barred by double jeopardy. The Supreme Court remanded the case to us to pass on the evidentiary rulings. *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 573 N.E.2d 22.

## II

### Assignment of Error

"The trial court, based upon the erroneous belief that the State failed to meet its threshold evidentiary burden to establish a conspiracy by independent evidence, erred when it suppressed the evidence in this case."

We believe the trial court erred in two separate ways in its rulings. These will be discussed separately after a recitation of the facts.

### A

The defendant, Lorain Chief of Police John Malinovsky, was charged by a four-count indictment with extortion, perjury, obstructing official business, and interfering with civil rights. It was the state's theory that the defendant acted with and through Sergeant Wayne Long of the Lorain Police Department.

Because the trial court dismissed the case (improperly so the Supreme Court ruled) before the state rested, the evidence of the state was largely uncontroverted.

The defendant's daughter was an officer of the Society for Prevention of Cruelty to Animals ("S.P.C.A."). She also was the manager and ran the day-to-day affairs of a bingo operation for the benefit of the S.P.C.A. The daughter lived at home with the defendant and also worked at the police station with the defendant.

The S.P.C.A. wished to operate the bingo game at a new location. The new premises could not pass the fire code without expensive improvements. The daughter informed the defendant of the S.P.C.A.'s problems with the fire code.

Sometime before January 11, 1988, defendant called Acting Fire Chief Joseph Pribanic to inquire about the fire code problems. On January 11, 1988 at about 11:30 a.m., the attorney for the S.P.C.A. was notified in writing by the fire department of the fire code violations. That afternoon the defendant had a discussion with Long and two other policemen about the S.P.C.A. not being allowed to open its bingo because of fire code violations. Long said that he knew of a night club that was in similar violation of the fire code, which was allowed to open after it hired off-duty firemen for fire watch. (The allegations were untrue.) The defendant ordered an investigation of the allegations and instructed Long to "advise" the firemen of the investigation.

That afternoon, Long went to the fire department and threatened fire inspectors Thomas and Cuevas with dire consequences unless they allowed the bingo hall to open despite the fire code violations. Long indicated that the defendant wanted the bingo hall to open, and if it was not allowed to open, the firemen would be charged with crimes they had not committed. Long said he was there at the direction of the defendant and that they could easily set up false charges.

As soon as Long left, Thomas and Cuevas told Acting Fire Chief Pribanic what happened. Pribanic set up a meeting with Safety Director Yepko and the story was repeated to him. A meeting was then held with the Lorain County Prosecuting Attorney. As a result of that meeting, a telephone conversation between Thomas and Long was arranged. The conversation was tape recorded.

## B

The trial court would not permit Thomas or Cuevas to testify about the threats made to them by Long. The trial court also denied introduction of the recorded conversation between Thomas and Long. The trial court was wrong.

The threats by Long were themselves part of the crime. For that purpose, it doesn't matter if the threats were true. The question was whether they were made. The direct evidence of the threats was not hearsay and should have been permitted.

As has been aptly said:

"The objection to a coconspirator's extrajudicial statements as hearsay may be entirely overcome if the offense involved is one which was accomplished by words only. In such a case the statements may be admitted, not to show their substance, but to prove that they were made. Thus, in a prosecution for attempted extortion and conspiracy, the extrajudicial statements of each of the defendants to the intended victims were held relevant to the very issues involved in the prosecution, and therefore not hearsay, so that it was not essential to prove the fact of conspiracy before admitting evidence of the statements." Annotation, Necessity and Sufficiency of Independent Evidence of Conspiracy to Allow Admission of Extrajudicial Statements of Coconspirators (1972), 46 A.L.R.3d 1148, 1157.

Likewise, if part of the threat was what the defendant, as chief of police, would or would not do, that too is not hearsay but part of the threat itself.

## C

■ We come now to the question of whether the statements of Long as to the involvement of the defendant in the crimes should have been admitted for the truth of the assertion.

Both sides agree on the law and cite the same case as controlling. *State v. Martin* (1983), 9 Ohio App.3d 150, 9 OBR 215, 458 N.E.2d 898.

The syllabus of that case provides:

"In order for statements to be admissible under the co-conspirator rule, it is sufficient if independent proof of the conspiracy is established by evidence making a *prima facie* case which fairly raises a presumption or an inference of conspiracy. (Evid.R. 801[D][2][e], construed.)"

*Martin* also states at 152, 9 OBR at 217, 458 N.E.2d at 901:

"A '*prima facie* case' is one in which the evidence introduced is sufficient to support but not to compel a certain conclusion and which does no more than furnish evidence to be considered and weighed but not necessarily accepted by the trier of facts. *Cleveland v. Keah* (1952), 157 Ohio St. 331 [47 O.O. 195, 105 N.E.2d 402]."

The evidence before the trial court was sufficient to support but not compel the conclusion that the defendant conspired with Long to threaten Thomas and Cuevas. The trial court thus erred in excluding the statements of Long.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

BAIRD and CACIOPPO, JJ., concur.