John **MALINOVSKY,** Petitioner–Appellee,

v.

**COURT OF COMMON PLEAS OF LORAIN COUNTY, Respondent– Appellant.**

No. 92–3691.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1993.

Decided Oct. 25, 1993.

Daniel G. Wightman (argued and briefed), Smith & Smith, Avon Lake, OH, for petitioner-appellee.

Jonathan E. Rosenbaum (argued and briefed), Office of the Pros. Atty., Elyria, OH, for respondent-appellant.

Before: KENNEDY and SILER, Circuit Judges, and BERTELSMAN, Chief District Judge.*

BERTELSMAN, Chief District Judge.

This is an action for writ of habeas corpus based upon the Double Jeopardy Clause of the Fifth Amendment.

The United States District Court for the Northern District of Ohio, Eastern Division, granted petitioner his requested writ. This matter is now before this court on appeal filed by the appellant/respondent, Court of Common Pleas of Lorain County. We affirm the district court's decision.

## I.

The rather involved factual and procedural background of this case is clearly and concisely set forth in District Judge Ann Aldrich's June 12, 1992, memorandum and order. Rather than reinvent the wheel, we rely heavily on Judge Aldrich's opinion. *Malinovsky v. Court of Common Pleas Lorain County, Ohio*, No. 1:92VC0355, 1992 WL 164433, *1–*6 (N.D.Ohio June 12, 1992).

The facts of this case are not contested.

Malinovsky, who is presently free on bond set in the state court, filed this habeas corpus petition on February 29, 1992, pursuant to 28 U.S.C. § 2254. Malinovsky contests the constitutionality of his custody by the State of Ohio and seeks to prevent his retrial after the State aborted its previous trial against him prior to verdict.

Malinovsky has exhausted all of his state remedies, which he must do before petitioning for a writ of habeas corpus. 28 U.S.C. § 2254(b). Also, although Malinovsky is entitled to relief only if he is "in custody," 28 U.S.C. § 2254(a), this prerequisite has been met because Malinovsky is in custody, although he has been released on a personal recognizance bond. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). Thus, Malinovsky's petition is properly within the jurisdiction of the district court.

At all times relevant to this case, Malinovsky was the Chief of Police for the City of Lorain. On March 9, 1989, Malinovsky was charged in a four count indictment with: 1) extortion, 2) perjury, 3) obstructing official business, and 4) interfering with civil rights. These four charges all relate to threats allegedly made by Malinovsky to certain Lorain fire inspectors, in order to prevent the fire inspectors from citing a bingo parlor for violations of the fire code. The bingo parlor was operated by Malinovsky's daughter.

The State did not allege that Malinovsky threatened the fire inspectors directly. Rather, the State alleged that Lorain police detective sergeant Wayne Long communicated these threats to Lorain fire inspectors Anthony Cuevas and Roger Thomas at Malinovsky's request. Long threatened to have Cuevas and Thomas falsely charged with criminal conduct if they did not overlook the fire code violations. After Long communicated these threats to Cuevas and Thomas, the two fire inspectors informed their fire chief, who in turn brought Long's conversations to the attention of the Lorain county prosecutor. The county prosecutor then instructed Cuevas and Thomas to tape-record their next conversation with Long. Thomas succeeded in tape-recording a subsequent telephone conversation he had with Long, during which Long implicated Malinovsky as the instigator of the threats.

With this evidence, the State brought criminal charges against Long and Malinovsky. The two defendants were tried separately, with Long's trial first. In large part due to the tape-recorded conversation, Long was found guilty of tampering with evidence. However, Long was subsequently pardoned by Governor Celeste, and continues to serve on the Lorain Police Department.

■ In its case against Malinovsky, the State also intended to prove Malinovsky's guilt by introducing Thomas's tape-recorded conversation with Long. Besides Thomas's testimony about the tape recording, the State also intended to have Cuevas testify as to what Long said Malinovsky had said. Antici-

---

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern Dis- trict of Kentucky, sitting by designation.

pating that the tape-recording and Thomas's testimony could be construed by the trial court to be inadmissible hearsay, the State made numerous attempts to raise the issue prior to trial; or, more accurately, the State tried to force Malinovsky to raise the issue prior to trial by forcing Malinovsky to file a motion to suppress.[1] For example, the State filed a "notice of intention to use evidence," admittedly in the hope that this notice would cause Malinovsky to file a motion to suppress. Malinovsky, however, did not respond. The State then filed a motion to compel Malinovsky to file objections. That motion was overruled by the trial court.

The State freely admits that its pretrial efforts to raise the hearsay issue were made in order to allow the State to take an immediate appeal, pursuant to Ohio Crim.R. 12(J), in the event that the State received an adverse ruling on the admissibility of the evidence. Rule 12(J) provides in pertinent part:

> The state may take an appeal as of right from the granting of a motion for the return of seized property, or from the granting of a motion to suppress evidence if, in addition to filing a notice of appeal, the prosecuting attorney certifies that: (1) the appeal is not taken for the purpose of delay; and (2) the granting of the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

As mentioned, however, the State's efforts to obtain a pretrial ruling on the admissibility of its evidence were unsuccessful, so it had no opportunity to take a pretrial appeal pursuant to Rule 12(J).

On June 6, 1989, the Lorain County Court of Common Pleas impaneled a jury and the case proceeded to trial. On June 8, 1989, the State questioned fire inspector Cuevas about the conversation he had had with Long, in which Long allegedly made comments relating to what Malinovsky had said. Malinovsky objected to the introduction of Cuevas's

testimony as inadmissible hearsay. The State argued that the testimony fell under the coconspirator exception to the hearsay rule, and was therefore admissible. The trial judge, finding that an insufficient foundation had been laid for admission of the evidence under the coconspirator exception to the hearsay rule, sustained Malinovsky's objection.

A recess followed, and the State filed a notice of appeal to Ohio's Ninth District Court of Appeals, pursuant to Ohio Crim.R. 12(J). The State averred that the trial court's ruling had effectively eviscerated the State's case against Malinovsky, and that the appeal was not being taken for purposes of delay. After the recess, however, the trial court insisted that the State continue with its case, despite the State having filed its appeal.

In compliance with the trial court's direction to proceed, the State called to the witness stand fire inspector Thomas, and attempted to elicit from him testimony about the tape-recorded conversation he had had with Long. Once again, Malinovsky objected to the introduction of Thomas's testimony as inadmissible hearsay, and the State argued that the testimony fell within the coconspirator exception to the hearsay rule. The trial court again sustained Malinovsky's objection, and refused to permit the State to play the tape-recorded conversation for the jury.

Following these rulings, the trial court took another recess in order to hold a conference with the parties in chambers. During that conference, the State took the position that the trial court's evidentiary rulings were tantamount to a suppression and that pending the resolution of the State's appeal, the trial court was deprived of further jurisdiction. The State also maintained, in response to a question from the trial court, that "[t]he State is not in a position to proceed with any degree of prosecution based upon the evidence, evidentiary rulings; and to call any other witnesses would be absolutely futile." Trial transcript at 197–98.

---

1. At oral argument before this court, appellant's counsel was questioned as to why the State did not itself file a motion in limine, rather than trying to force appellee to file a motion to suppress. Under Ohio law the trial court's ruling on

a motion in limine is considered a tentative, interlocutory order and is therefore not immediately appealable. *See State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142, 145–46 (1986).

After the State made clear that it would not call any further witnesses, Malinovsky moved for a judgment of acquittal under Ohio Crim.R. 29. In response to Malinovsky's motion for acquittal, the State's attorney declared: "Well, I'd like it clear that I have not rested, and don't feel that anybody can do anything after I filed the notice of appeal at this level." *Id.* at 199. However, the trial court ruled that "the appeal that has been taken is not a final order; and any attempt to perfect such an appeal is not of any legal force or effect; and, therefore, I hadn't made any order on the prosecuting attorney's office, but I had requested that you proceed with evidence in this case." *Id.* at 199–200.

Accordingly, the trial court resumed proceedings before the jury, and directed the State to call its next witness. Consistent with the position that it had taken during the conference in chambers, the State declared that it had no further witnesses, but declined to rest. The trial court then retired the jury, and further discussion ensued between the trial court and both parties.

During the course of those discussions, the trial court reminded the State that only one of the four charges against Malinovsky was a conspiracy count (count four), and then asked the State whether it had any separate evidence concerning the other three counts. The State responded that to prove the three other charges, it intended to rely on the same evidence that the trial court had previously ruled inadmissible, so the State could not go forward on those charges, either. Malinovsky reacted by moving for a judgment of acquittal.

The trial court reiterated that after reviewing the law and the evidence, it remained convinced that the evidence in question was inadmissible because no foundation had been laid to bring it within the coconspirator exception to the hearsay rule. However, the trial court was reluctant to enter a judgment of acquittal, and dismissed the case for want of prosecution. The record reads:

THE COURT: At this juncture, the court finds that there is an unwillingness on the part of the State to proceed with its case. As the court indicated yesterday, the pros-

ecution cannot be in a position to frustrate the legitimate interests of the court in completing the lawsuit.

The court will not grant any stay and continue this trial indefinitely. The court finds further that it would be inappropriate to render a judgment of acquittal for the defendant.

Rather, the court will enter a dismissal of the charges for want of prosecution on behalf of the State. The court, in making this determination, finds that only one of the four counts charged in the indictment relates to the conspiracy.

That means that the State's burden is to prove by evidence which convinces the jury beyond a reasonable doubt all of the essential elements of the crimes of extortion, perjury and the misdemeanor offense of obstruction of the performance of the duties of a public official.

Whether or not the evidence of conspiracy relates to those matters is not at issue because there is no such evidence been [sic] admitted into this trial. And whether or not the court's decisions are in accordance with the applicable case law is not a matter for review by any party other than the appellate court.

And, therefore, this court will journalize its entry. And the only entry the court will journalize is that this case will be dismissed for want of prosecution by the State. We'll stand in recess.

THE BAILIFF: Court is recessed.

MR. SMITH [FOR MALINOVSKY]: I would like to state for the record that we object to the judge's ruling about a dismissal. We feel it should have been a verdict of acquittal, because the State had effectively rested and a jury was empaneled; and, therefore, an acquittal should ensue, and a verdict should be granted because they failed to prove their case.

*Id.* at 209–10.

After this colloquy, the trial court recalled the jury, advised the jurors that "for reasons that do not concern you at this time, the court has decided to dismiss for want of prosecution [the] charges against the defendant," and dismissed the jury. *Id.* at 210–11.

The trial court then journalized its entry of dismissal for want of prosecution. *State v. Malinovsky*, No. 89–CR–037121, slip op. (Lorain County Ct. Common Pleas June 6, 1989).

The State then appealed the trial court's dismissal of the action for want of prosecution. The Ohio Court of Appeals dismissed the State's appeal, holding that a mid-trial appeal of an adverse evidentiary ruling by the State was not permitted under Ohio Crim.R. 12(J). *State v. Malinovsky*, No. 89–CA–004592, slip op. at 5, 1989 WL 157226 at *2–*3 (Ohio Ct.App. Dec. 27, 1989). The Ohio Court of Appeals further held that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as well as section 10, article I, of the Ohio Constitution, barred further proceedings against Malinovsky. *Id.* at 8, 1989 WL 157226 at *4.

The State then pursued an appeal to the Ohio Supreme Court. The Ohio Supreme Court reversed. With respect to the mid-trial appeal issue, the Ohio Supreme Court stated:

> Under Crim.R. 12(J) the state must certify that the appeal is not taken for the purpose of delay and that the complained-of ruling destroys the state's case. Because the state certifies that the ruling destroys its case, the ruling is, in essence, a final order.

*State v. Malinovsky*, 60 Ohio St.3d 20, 573 N.E.2d 22, 25 *cert. denied*, — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). With respect to the double jeopardy issue, the Ohio Supreme Court cited *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), and *State v. Calhoun*, 18 Ohio St.3d 373, 481 N.E.2d 624 *cert. denied*, 474 U.S. 983, 106 S.Ct. 391, 88 L.Ed.2d 343 (1985), and held:

> In *Scott*, the United States Supreme Court held that double jeopardy protection is not absolute until there is a dismissal or acquittal based upon a factual finding of innocence. *Scott* ultimately held that retrial is permissible after the guarantee against double jeopardy has attached where the defendant has sought a termination of the proceedings on grounds other than the state's failure of proof. Similarly, in *Cal-*

*houn*, we held that retrial was not barred by the Double Jeopardy Clause where a trial court erroneously dismissed an indictment at trial on the grounds that the statute establishing the crime was unconstitutionally vague.

> Today, we are asked whether double jeopardy bars retrial where a trial court, after ruling on a defendant's objection to evidence crucial to the state's case, erroneously precluded the state from taking a Crim.R. 12(J) appeal and subsequently dismissed criminal charges for a failure to prosecute. Because the Crim.R. 12(J) appeal and subsequent dismissal for failure to prosecute were precipitated by the defendant's objection, in light of *Scott* and *Calhoun*, we hold that the Double Jeopardy Clause does not bar reprosecution where a criminal prosecution is dismissed for failure to prosecute after the trial court has erroneously required the state to proceed with trial despite the state's properly filed Crim.R. 12(J) appeal.

*Id.* 573 N.E.2d at 25–26 (citations omitted).

The Ohio Supreme Court then remanded the action to the Ohio Court of Appeals for a determination of whether the trial court's evidentiary ruling had been erroneous. Malinovsky's petition for a writ of certiorari in the United States Supreme Court was denied. *Malinovsky v. Ohio*, — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). On remand, the Ohio Court of Appeals found that the trial court had erred in excluding the State's evidence and remanded the case to the trial court for further proceedings. *State v. Malinovsky*, 81 Ohio App.3d 170, 173–74, 610 N.E.2d 529, 531 (1991). Malinovsky's motion to the Ohio Supreme Court for leave to appeal the order of the Court of Appeals on remand was dismissed. *State v. Malinovsky*, 63 Ohio St.3d 1403, 585 N.E.2d 425 (1992).

This petition for a writ of habeas corpus followed. Since the filing of this petition, the state court action has been assigned to a different trial judge, *State v. Malinovsky*, No. 91–AP–194, slip op. (Ohio Apr. 6, 1992), and the district court stayed the state court proceedings until it could act upon Malinovsky's petition. Order dated April 29, 1992.

## II.

The district court reviewed the report and recommendation submitted by the magistrate judge. The district judge agreed with the magistrate's conclusions that (1) Malinovsky's due process rights were not violated by the State's mid-trial appeal, and (2) Malinovsky's retrial is barred by the Double Jeopardy Clause. It is only this latter ruling that the Appellant appeals to this court. The district court concluded that, after the state trial court in mid-trial entered a dismissal for want of prosecution of the first case and discharged the jury, any attempt by the State of Ohio to now retry Malinovsky violates the Double Jeopardy Clause. The reasoning of the district court is sound and its ruling is AFFIRMED.

## III.

■ The Double Jeopardy Clause states that "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. There is settled Supreme Court authority as to the general boundaries of the Double Jeopardy Clause, the primary case being *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). *Scott* sets out the parameters of the Clause. If a defendant receives a judgment of acquittal, in most circumstances that judgment may not be appealed. However, if a defendant is convicted and then succeeds in reversing the conviction on appeal on any basis other than insufficiency of evidence, he may be retried without violating the Clause. *Id.* at 90–91, 98 S.Ct. at 2193–94.

The Double Jeopardy Clause may also be implicated even in situations where there has been no final determination of guilt or innocence. *Id.* at 92, 98 S.Ct. at 2194. Such occurred in the case *sub judice* when the state trial judge dismissed the case for want of prosecution without there being either a

verdict from the jury or a judgment from the court based upon insufficiency of the evidence.

The Supreme Court has noted two types of situations where there has been no final determination of guilt or innocence in a case, yet the Double Jeopardy Clause prevents retrial. Those are (1) where the trial judge "terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence," and (2) where the trial judge "declares a mistrial." *Id.*

■ The district court determined that the action by the state court judge in dismissing for want of prosecution and discharging the jury was essentially a "mistrial." [2] We agree. The defendant demanded acquittal on the ground that the prosecution had insufficient admissible evidence. The prosecution took the position that the trial court had no jurisdiction to do anything. Joint Appendix, pp. 103–04. The trial court, in an attempt to avoid ordering an acquittal, dismissed the indictment for want of prosecution and discharged the jury. Joint Appendix, p. 105. In essence, this was a mistrial. [3]

■ Whether a criminal defendant can be retried without violating the Double Jeopardy Clause after a mistrial has been declared depends in part upon who sought the mistrial. *Scott* sets forth the double jeopardy consequences when a mistrial is declared. If the *defendant* "successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial," a retrial may still be had. *Scott,* 437 U.S. at 93, 98 S.Ct. at 2195; *United States v. Cameron,* 953 F.2d 240, 243 (6th Cir.1992).

■ But when a mistrial is declared "at the behest of the prosecutor or *on the court's own motion,* ... 'the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment

---

2. The state trial judge entered a dismissal for want of prosecution. However, federal courts are not bound by a state judge's characterization of his own actions. *Scott,* 437 U.S. at 96, 98 S.Ct. at 2196–97; *United States v. Sisson,* 399 U.S. 267, 290, 90 S.Ct. 2117, 2130, 26 L.Ed.2d 608 (1970).

3. A mistrial is defined as a trial which has been terminated prior to its normal conclusion because of some extraordinary event, prejudicial error that cannot be corrected at trial, or a deadlocked jury. *Black's Law Dictionary* 1002 (6th ed. 1990).

on him,' [is balanced] against the public interest in insuring that justice is meted out to offenders." *Scott,* 437 U.S. at 92, 98 S.Ct. at 2194 (quoting *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963) (emphasis added)). Under this latter circumstance, the Double Jeopardy Clause is not offended and a retrial is not prohibited if there existed a *manifest necessity* for declaring a mistrial. *Arizona v. Washington,* 434 U.S. 497, 505–06, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978); *Glover v. McMackin,* 950 F.2d 1236, 1242 (6th Cir. 1991); *United States v. White,* 914 F.2d 747, 754 (6th Cir.1990); *Hamm v. Jabe,* 706 F.2d 765, 767 (6th Cir.1983); *United States v. Bridewell,* 664 F.2d 1050, 1051 (6th Cir. 1981).[4]

### IV.

■ Appellant argues on appeal that a retrial may be had because the mistrial was actually caused by the actions of petitioner. In support of its argument that appellee "caused" the functional equivalent of a mistrial, appellant argues that Malinovsky deliberately and "consciously embarked upon a course of conduct that predictably would and did end in midtrial appeal as the result of his falsely labeling his motion to suppress the evidence as a trial objection." (Appellant's brief, p. 15). Thus, appellant points to the fact that Malinovsky refused to file a motion to suppress and instead waited until the hearsay testimony was offered during trial to object. This intentional conduct, argues appellant, led to the appeal and indirectly to the dismissal, and therefore amounts to causing the mistrial.

The decisions imposing upon a defendant the responsibility for a mistrial usually involve more direct action by a defendant, such as where a defendant actually moves for a mistrial. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's *motion* is necessitated by a prosecutorial or judicial error." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27

L.Ed.2d 543 (1971) (opinion of Harlan, J.) (emphasis added). "Such a *motion* by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Scott,* 437 U.S. at 93, 98 S.Ct. at 2195, (emphasis added).

A plain reading of the factual and procedural history of this case reveals that Malinovsky did not move for a mistrial in his state court case. The record is void of any evidence that Malinovsky deliberately and voluntarily sought to have the court enter a dismissal so as to end the proceedings against him on anything other than a determination of his guilt or innocence. Rather, what Malinovsky did do was refuse to file a motion to suppress. Appellant tried to force Malinovsky to do so first by filing a notice of intention to use evidence (Joint Appendix, p. 92), but Malinovsky did not respond. Appellant then filed a motion to compel the defense to file objections (Joint Appendix, p. 94). This motion was overruled by the state trial court. Malinovsky then made an evidentiary objection to the hearsay testimony when it was offered at trial, which was sustained. He sought a judgment of acquittal when the State refused to call further witnesses, but the court twice refused to grant his request, choosing instead to dismiss for failure to prosecute.

Thus, in this case there was no actual motion by defendant. Appellant instead seeks to rely on a chain reaction of events as "causing" the mistrial, even though defendant did not actually move for a mistrial. However, the links in this chain are simply too weak to support an inference that appellee caused a mistrial.

Appellant relies upon *State v. Davidson,* 17 Ohio St.3d 132, 477 N.E.2d 1141 (1985), to support its argument that appellee was aware of his responsibility to raise his evidentiary objections in the form of a pretrial motion to suppress and is therefore responsible for the mistrial. In *State v. Davidson* the court ruled that defendant's pretrial mo-

---

4. Ohio law also recognizes that the trial court's discharge of an impaneled jury implicates jeopardy absent an absolute, imperative necessity.

*See generally* 25 O.Jur.3d, *Criminal Law* § 389 (1981).

tion in limine to prohibit certain proof was, in reality, a motion to suppress evidence and that the granting of the motion made the State's case so weak that the order was a final order immediately appealable by the State. *Id.* 477 N.E.2d at 1144–45. *Davidson* held "that any motion which seeks to obtain a judgment suppressing evidence is a 'motion to suppress' for purposes of R.C. 2945.67 and Crim.R. 12(J) where that motion, if granted, effectively destroys the ability of the state to prosecute." *Id.* But this argument overlooks the fact that, even if the defense objection was the equivalent of a motion to suppress, there was no manifest necessity for discharging the jury while it was resolved. *See* discussion *infra* part V.

## V.

■ The decision of a trial judge to declare a mistrial is treated deferentially; however, the judge is required to exercise "sound discretion" in so declaring. *Arizona v. Washington,* 434 U.S. at 506 n. 18, 98 S.Ct. at 831; *Glover v. McMackin,* 950 F.2d at 1242; *Hamm v. Jabe,* 706 F.2d at 767. Thus, on review, the inquiry is whether the trial court properly exercised discretion in determining that manifest necessity existed for the declaration of a mistrial. Respondent appears to concede that the judge acted unjustifiably. (Appellee should not "be permitted to profit from the trial court's *mishandling* of the situation the Petitioner consciously elected to cause." (Appellant's brief, p. 17) (emphasis added)).

In this case, the trial judge on his own volition dismissed for want of prosecution without considering other alternatives. Whether the trial court looked at alternative measures is considered in determining whether proper discretion was exercised. *Glover v. McMackin,* 950 F.2d at 1242.

Granted, the circumstances presented to the judge in this case were unusual. The judge did not, however, stop to consider that the State's right to take a mid-trial appeal on the evidentiary ruling could be upheld.[5] He did not stop to consider that if the appellate courts were to hold that a mid-trial appeal is permissible, the evidentiary ruling would be given expedited appellate review. And he did not stop to consider whether a more appropriate action might have been to stay the proceedings, while the prosecution sought an expedited appeal.

Staying the proceedings while keeping the jury under the admonition would have been the more appropriate course, since a mid-trial appeal pursuant to Ohio Crim.R. 12(J) had never before been attempted, and an expedited review of the evidentiary ruling would occur if such a mid-trial appeal were held to be permissible. If this course had been pursued, the initial trial could have been brought to a resolution without implicating appellee's rights against double jeopardy. It is fallacious to blame the defendant for the trial judge's action in dismissing the jury.

The appellant argues that, because the Ohio Supreme Court ultimately held that its mid-trial appeal was valid, the trial court was without jurisdiction to undertake any action pending the appeal. There is an absence of case law on the issue of the validity of a trial court's actions following what is ultimately held to be a permissible mid-trial appeal. But, as noted in the district judge's memorandum and order, while it may technically be true that the trial court was without jurisdiction, the State ignores the fact that the trial court did in fact continue to act and that the defendant's constitutional rights were implicated by those actions. The trial judge released the jury from the admonition. Even if he should not have done so, they were dismissed from further service on this

---

5. Under Ohio law, an appeal may be had only from a final order. Ohio Rev.Code Ann. § 2505.-03–.04 (Anderson 1991). The trial court's ruling on a motion in limine or an evidentiary issue during trial is generally not considered a final order. *State v. Grubb,* 28 Ohio St.3d 199, 503 N.E.2d 142, 145–46 (1986). However, adverse rulings on motions to suppress are appealable by the State under Ohio Crim.R. 12(J). The Ohio

Supreme Court has held that determining whether something is a motion to suppress does not depend upon the label given the motion by the defendant. *State v. Davidson,* 17 Ohio St.3d 132, 477 N.E.2d 1141, 1144–45 (1985) (holding that a motion in limine was in reality a motion to suppress, appealable by the State as a final order).

case. At a minimum, the trial court probably did have jurisdiction to handle administrative matters pending the appeal, such as how to deal with the jury.[6]

Nor can it be successfully argued that appellee consented to the mistrial. Sixth Circuit precedent is clear that consent is implied only if there is some positive indication from the record of the defendant's willingness to consent to declaration of a mistrial. *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir.1991). Malinovsky did not consent to the mistrial. In fact, Malinovsky objected to the trial court's dismissal. Joint Appendix, p. 104.

Appellant submits that any action by the trial judge was null and void. We disagree. The Ohio Supreme Court itself acknowledged that the trial court continued to act in the proceedings before it despite the fact that the State had appealed. In fact, the Ohio Supreme Court's holding that a retrial would not violate the Double Jeopardy Clause was based, not on the determination that the trial court's actions were null and void, but rather on its determination, relying on *United States v. Scott*, that it was Malinovsky and not the trial judge who had effectively terminated the proceedings on grounds other than guilt or innocence.

Appellant argues that the state court proceedings were "suspended" as a result of the appeal and, in essence, the second trial is not a "retrial" but instead a resumption of the initial proceedings. Appellant submits that the original jury panel can be called back to serve. This suggestion ignores the fact that the judge not only discharged the jury but also released them from their admonition. To now attempt a post-discharge resumption of the trial with the same jury as if nothing had occurred would be impractical.

Appellant further submits that "there is no reason to conclude that this Petitioner would be more unjustly treated with a new jury properly selected than any other defendant facing a retrial." (Appellant's Brief, p. 23). This statement ignores one of the policies underlying the Double Jeopardy Clause. That policy is not to avoid "unjust treatment," but rather to protect the defendant in his right to have the first jury empaneled make a determination as to his guilt or innocence and to bring closure to the proceedings. *See United States v. Cameron*, 953 F.2d 240, 243 (6th Cir.1992). This protection must be afforded, provided that the defendant himself has not voluntarily sought to terminate the proceedings prior to a determination of factual guilt or innocence.

The decision of this court in *United States v. Bridewell*, 664 F.2d 1050 (6th Cir.1981), illustrates that an error of the trial judge in declaring a mistrial can trigger the Double Jeopardy Clause, even though the prosecution is not at fault. This is what occurred here.

## VI.

In conclusion, we observe that the issues on appeal are two-fold. First, was the petitioner responsible for the trial court's declaration of the functional equivalent of a mistrial? This issue is without merit, since one does not cause a mistrial by making a reasonable objection to testimony on the ground of hearsay or in failing to file a motion to suppress where there is no requirement that such a motion be made.

Second, was there a "manifest necessity" for the trial judge's decision to release the

---

6. Ohio law recognizes that the trial court is not completely divested of jurisdiction once an appeal has been perfected. In general, the trial court retains jurisdiction over those matters not inconsistent with the appellate court proceedings. 4 O.Jur.3d, *Appellate Review* § 246 (1978); *Yee v. Erie County Sheriff's Dep't*, 51 Ohio St.3d 43, 553 N.E.2d 1354, 1355 (1990); *In re Kurtzhalz*, 141 Ohio St. 432, 48 N.E.2d 657, 659 (1943).

In the case of appeals on grounds of double jeopardy, the courts almost uniformly hold that when an appeal is taken, the trial court retains jurisdiction to decide whether the appeal is frivolous, and if it determines that it is, to proceed to trial. *See Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir.1990) for a good discussion.

The situation here is analogous. There was no prior precedent for taking an appeal from an evidentiary ruling during trial. The Supreme Court of Ohio acknowledged as much. The trial court here treated the appeal as frivolous. As it turned out, the trial court was in error, but in the constitutional sense, it did not act in the complete absence of jurisdiction. The trial judge was in control of the jury, and he improperly discharged it. That discharge cannot be attributed to the defendant.

jury from its admonition while the prosecution sought an expedited appeal? If the trial court had attempted to stay the proceedings and keep the jury under its admonition but this had failed because the jury became tainted over a period of time, we would agree that retrial would not result in double jeopardy. But no such effort was made, and the state trial judge expressly released the jury from the admonition, thus causing an immediate taint, and rendering resumption of the trial before the same jury impossible as a practical matter.

Accordingly, the judgment of the district court is AFFIRMED.

SILER, Circuit Judge, dissenting.

I respectfully dissent, for I believe that once the appeal was taken in the middle of trial, pursuant to Ohio Crim.R. 12(J), the trial court was without jurisdiction to take further action, so any dismissal was null and void.

Although this procedure under Rule 12(J) was apparently not utilized until this case, nevertheless, the Supreme Court of Ohio has approved this interlocutory appeal. *See State v. Malinovsky,* 60 Ohio St.3d 20, 573 N.E.2d 22, 25 *cert. denied,* — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). Therefore, because such an appeal was authorized, even if it was the first ever effected, that divested the trial court of its jurisdiction to dispose of the case. *See Yee v. Erie County Sheriff's Dep't,* 51 Ohio St.3d 43, 553 N.E.2d 1354, 1355 (1990); *State v. Watson,* 48 Ohio App.2d 110, 355 N.E.2d 883, 885–86 (1975). The majority opinion has stated that the trial court is not completely divested of jurisdiction once an appeal has been perfected. Nevertheless, its jurisdiction is limited to those matters which do not directly affect the ability of the appellate court to decide the case. Thus, the dismissal of the case and the discharge of the jury would be acts which would prevent the appellate court from taking action on the issues before it. This is similar to the rule in the federal court system, which precludes the district court from taking any action disposing of a case while it is pending on appeal. *See, e.g., Showtime v. Covered Bridge Condominium Ass'n,* 895 F.2d 711, 713 (11th Cir.1990).

The factual situation in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), is different, because there the defendant filed motions to dismiss both before and after the jury had been empaneled, and the court granted the motion at the close of all the evidence. In the case at bar, the defendant sought a judgment of acquittal, not a dismissal. Nevertheless, *Scott* stands for the proposition that where a case has been terminated without any determination of factual guilt or innocence, there may be situations in which the reprosecution of the defendant is not in violation of the Double Jeopardy Clause of the Constitution.

In this case, I would find that the action of the trial court after the interlocutory appeal was taken was a nullity. Therefore, the dismissal of the case and the discharge of the jury were void and the trial court should notify the jurors to return to try the case. If they had been "tainted," in the meantime, by discussion of the case with others or in some other way, then the parties could have the choice of proceeding under the circumstances or moving for a mistrial. If a mistrial is granted, it likely would be due to "manifest necessity," *see Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978), and the trial court could then begin the trial anew. Therefore, I would reverse the action of the district court in granting the writ of habeas corpus.