SMITH, Circuit Judge,
concurring.
Although I reach the same result as does the majority, I write separately to explain how in my view we should characterize the nature of our inquiry in this case. While the majority considers this issue to be unsettled, I believe that position is no longer, tenable under Supreme Court precedent.
According to the majority, it is unclear whether a court must determine the existence vel non of a constitutional violation before weighing whether officials sued for that violation are protected by qualified immunity, or whether the first determination is part and parcel of the second. I agree that the confusion in this area began in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and that our cases reflect that confusion. Saucier taught that a court required to rule on a qualified immunity issue must consider a “threshold” question: “Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?” 533 U.S. at 201, 121 S.Ct. 2151. “If no constitutional right would have been violated were the allegations established,” the Court continued, “there is no necessity for further inquiries concerning qualified immunity.” Id. The final clause in that statement can be read two ways, and we have employed both readings. At times, we have reasoned that the existence of a constitutional violation is part of the qualified immunity inquiry. See, e.g., Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.2004) (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir.2002) (“If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity.”)). At other times, we have declared that determination of the constitutional issue precedes qualified immunity. See, e.g., Carswell v. Borough of Homestead, 381 F.3d 235, 237 (3d Cir.2004).
I believe that Brosseau v. Haugen, — U.S. -, 125 S.Ct. 596, 160 L.Ed.2d 583 *605 (2004) (per curiam), clarifies the correct reading of Saucier on this question. In Brosseau, the Court considered whether a police officer violated a clearly established constitutional right when the officer shot a fleeing suspect in the back. According to the Court, this inquiry was separate from the question whether a constitutional right was violated in the first place. “We express no view as to the correctness of the Court of Appeals’ decision on the constitutional question itself,” the Court explained, id. at 598, but added that, “[w]e believe that, however that question is decided, the Court of Appeals was wrong on the issue of qualified immunity.” Id. Importantly, the Court provided this disclaimer: “We have no occasion to reconsider our instruction in [Saucier ] that lower courts decide the constitutional question prior to deciding the qualified immunity question.” Id. at 598 n. 3. As the concurring opinion in Brosseau emphasizes, this last point is not merely a matter of semantics. Joined by Justices Scalia and Ginsburg, Justice Breyer stated:
I am concerned that the current rule [requiring lower courts to consider the constitutional question before the qualified immunity question] rigidly requires courts unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision (e.g., qualified immunity) that will satisfactorily resolve the case before the court. Indeed, when courts’ dockets are crowded, a rigid “order of battle” makes little administrative sense and can sometimes lead to a constitutional decision that is effectively insulated from review.
125 S.Ct. at 600-01 (Breyer, J., concurring).[5] Justice Stevens, dissenting, seemed equally convinced that the constitutional and qualified immunity inquiries are separate. See id. at 601. Tallying the votes, I conclude that while some Justices of the Supreme Court do not like the rule, all nine Justices read Saucier to require two separate inquiries, a constitutional inquiry and a qualified immunity inquiry, and at least eight Justices believe the former must precede the latter.[6] Accordingly, I disagree with the majority that, in the wake of Brosseau, “[t]here is some disagreement as to how Saucier v. Katz, which sets forth the qualified immunity inquiry, should be interpreted.”
The majority appears to attempt to avoid confusion by relabeling the second prong of the Saucier test. Whereas Bros-seau refers to the second prong of the Saucier test as addressing the “qualified immunity” issue, the majority refers to that prong as addressing “whether the right was clearly established.” While I share the concern motivating this seemingly commonsensical change, I think it conceals the basic problem with the majority’s approach. That is,' the Supreme Court seems clearly to view the second prong of *606 the Saucier test as the essential “qualified immunity” inquiry — not as part of a larger qualified immunity inquiry. See Saucier, 533 U.S. at 208, 121 S.Ct. 2151 (“[bjecause we granted certiorari only to determine whether qualified immunity was appropriate, however, and because of the limits imposed on us by the questions on which we granted review, we will assume a constitutional violation could have occurred on the facts alleged.... ”). We should do the same.
Unfortunately, in my view the majority compounds its error in describing the nature of our inquiry by holding that the officers in this case were entitled to qualified immunity because there was no constitutional violation. See Maj. Op. at 596 (“[W]e conclude that there was no constitutional violation. Therefore, we hold that the officers were entitled to qualified immunity and we will reverse denial of the officers’ motion for summary judgment.”) To my knowledge, only one of our sister circuits has gone this far. See Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 65 (1st Cir.2004) (holding that government agents were entitled to qualified immunity because the plaintiff failed to establish a constitutional violation under Saucier’s first prong).[7] By contrast, the Eleventh Circuit speaks neither of the qualified immunity inquiry as consisting of two steps, see Evans v. Stephens, 40,7 F.3d 1272, 1278, 2005 WL 1076603, at *4 (11th Cir.2005) (en banc ),[8] nor holds that failure to establish a constitutional violation triggers qualified immunity. See Purcell v. Toombs County, 400 F.3d 1313, 1324 (11th Cir.2005) (Edmondson, C.J.).[9] As the majority’s terminology and holding seem to me inconsonant with Brosseau, I believe the Eleventh Circuit employs the better approach.
Ultimately, the majority apparently feels compelled to hold that the officers have qualified immunity because “that was the basis for this interlocutory appeal.” In other words, the majority seems to believe that what arrived in a “qualified immunity” envelope cannot be returned in a “failure to state a claim” envelope. I disagree with the majority for two reasons.
First, the purpose of the qualified immunity doctrine is to “permit insubstantial lawsuits to be quickly terminated,” Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), i.e., to allow the “dismissal of insubstantial lawsuits without trial.” Id. In other words, the essential reason we are permitted to exercise interlocutory jurisdiction when qualified immunity is denied by a district court is broadly to determine whether dismissal is appropriate. “Unless the plaintiffs allegations state a claim of violation of clearly established law, the Court has explained, a defendant pleading qualified immunity is *607 entitled to dismissal before the commencement of discovery.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis added). Thus, “[a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged a deprivation of a constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the violation.” Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (emphasis added; citation omitted). In my view, where no such claim is stated, dismissal on that ground — rather than on the ground that the officials are immune — is appropriate.
Second, the majority’s reasoning contravenes the purpose of the two-step Saucier inquiry. As discussed above, Saucier’s “order of battle” is designed to force courts to establish precedent on the contours of constitutional rights to provide guidance for law enforcement officers. See 533 U.S. at 201, 207, 121 S.Ct. 2151. Applying this approach, a court may find that an official’s alleged conduct was constitutionally permissible or that the conduct, while constitutionally impermissible, did not cross a “clearly established” line. Referring to both of these scenarios as establishing “qualified immunity” sends a confusing signal to law enforcement officials concerning what actions they may or may not take. The majority’s reasoning thus ironically has the potential to frustrate the development of “clearly established” law, the very raison d’etre for Saucier ’s two-step test.
In view of the foregoing, I believe the proper analytical course in this case would be first to consider whether the defendants violated the Constitution. Because we answer that question in the negative, Ms. Wright lacks a cause of action. That determination should end our inquiry, and we should decline to reach the “second, qualified immunity question.” Brosseau, 125 S.Ct. at 597.

. In favor of its prescribed "order of battle,” the Saucier Court for its part explained that
[i]n the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law’s elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.
533 U.S. at 201, 121 S.Ct. 2151.

. Unlike the concurring Justices in Brosseau, Justice Stevens in dissent did not clearly agree with the Brosseau majority that courts must settle the constitutional question before the qualified immunity question. See 125 S.Ct. at 601.

.The other cases from the Courts of Appeals cited by the majority do speak of Saucier’s two-step qualified immunity inquiry, but they do not cite Brosseau to support that characterization. See Craighead v. Lee, 399 F.3d 954, 962 (8th Cir.2005) (considering Brosseau's instructions regarding Saucier’s second prong); Beard v. Whitmore Lake Sch. Dist., 402 F.3d 598, 607 (6th Cir.2005) (same); San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 978 n. 17 (9th Cir.2005) (same). See also Simkins v. Bruce, 406 F.3d 1239, 1240-41 (10th Cir.2005) (same).

. But see Harris v. Coweta County, 406 F.3d 1307, 1312 (11th Cir.2005) (describing two-step Saucier test as plaintiffs burden to show that qualified immunity is not appropriate).

. See also Meyers v. Redwood City, 400 F.3d 765, 770 (9th Cir.2005) ("Although we conclude that the Defendants did not violate the constitutional rights of the Plaintiffs, given the complexity of the question, we will address the easier question of qualified immunity as well.”).