911 F.2d 733
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William D. McMASTER, Petitioner-Appellant,
v.
CITY OF TROY, Respondent-Appellee.
 No. 88-1715.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1990.
 
 Before MERRITT, Chief Circuit Judge, and KRUPANSKY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 William D. McMaster appeals the dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254 and his claim for damages filed pursuant to 42 U.S.C. Sec. 1983. For the reasons that follow, we affirm.
 
 I.
 
 2
 McMaster's misfortune began on February 14, 1984, when the Michigan Secretary of State suspended his driver's license for a period of one year following his unsuccessful appeal from the automatic suspension of his license for failure to take a breathalyzer test. On April 23, 1984, McMaster was arrested by a City of Troy, Michigan, police officer for driving with a suspended license. McMaster subsequently sought judicial review of the Secretary of State's suspension of his license in the Oakland County Circuit Court, and on September 12, 1984, the court denied McMaster's petition to set aside the suspension of his license. McMaster then filed a petition for rehearing on the matter.
 
 
 3
 On January 9, 1985, McMaster was tried and convicted on the charge of driving with a suspended license in violation of a City of Troy ordinance. The state district court denied McMaster's request that the trial be adjourned pending the outcome of his challenge to the legality of his license suspension. Following his conviction, McMaster was sentenced to fifteen days in jail and assessed a fine and costs of $200. McMaster appealed his conviction, and he remained free on bond.
 
 
 4
 On June 19, 1985, the Oakland County Circuit Court issued an order setting aside the suspension of McMaster's license. The suspension was set aside because "the administrative hearing officer did not properly determine the issue enumerated in MCLA 257.625(f)(2)(d)," which requires that a motorist arrested for an alcohol related traffic offense be advised of his right to a chemical test to determine blood alcohol content.
 
 
 5
 McMaster's appeal of his conviction for driving with a suspended license eventually reached the Michigan Court of Appeals. In Ciyt of Troy v. McMaster, 154 Mich.App. 564, 398 N.W.2d 469 (1986) (per curiam), the court rejected McMaster's allegations of trial errors, but at the conclusion of its opinion the court noted that his license suspension had been set aside, and it remanded the case to the state district court "for further proceedings consistent herewith." Id. at ---, 398 N.W.2d at 473.
 
 
 6
 In the state district court, McMaster sought to have his conviction set aside on the ground that an essential element of driving with a suspended license had been extinguished by the circuit court's revocation of his license suspension. The state district court denied McMaster's motion, and after unsuccessful appeals to the Oakland County Circuit Court and the Michigan Court of Appeals, McMaster began serving his fifteen-day jail sentence on December 14, 1987. On December 17, 1987, McMaster filed with the Michigan Supreme Court an emergency application for leave to appeal and an application for bond pending appeal, and on December 18, 1987, he filed a petition for a writ of habeas corpus in the Oakland County Circuit Court. The circuit court ordered that McMaster be released on a personal bond pending determination of his request for leave to appeal to the Michigan Supreme Court.
 
 
 7
 On December 30, 1987, the Michigan Supreme Court denied leave to appeal, and on January 5, 1988, the circuit court conducted a hearing on the merits of McMaster's state habeas corpus action. The court ruled that although McMaster's license suspension had been set aside, public policy considerations precluded setting aside his conviction. The court dismissed the habeas corpus petition and ordered McMaster to commence serving the remaining days of his jail sentence at 5:00 p.m. on January 6, 1988. McMaster completed his jail sentence on January 12, 1988.
 
 
 8
 On January 6, 1988, at 12:44 p.m., McMaster filed in the federal district court a petition for a writ of habeas corpus naming the City of Troy and Oakland County as defendants. The petition alleged that McMaster was free from incarceration at the Oakland County jail until 5:00 p.m. that date. The petition also alleged that his conviction for driving with a suspended license was void because the underlying license suspension had been set aside by the state circuit court. McMaster alleged that he exhausted his state remedies, and he requested the issuance of an order to show cause and an order granting his release on a personal bond pending further action by the district court. The district court refused to issue an order to show cause or to order McMaster's release on bond, and the petition for writ of habeas corpus was not served on the named defendants. However, the district court did not dismiss the petition.
 
 
 9
 On May 4, 1988, McMaster filed a first amended complaint naming the City of Troy as the only defendant. Count I of the amended complaint sought the same habeas corpus relief as the original petition, and Count II added a claim for damages under 42 U.S.C. Sec. 1983. The City of Troy did not file an answer to the amended complaint, and on June 3, 1988, the district court clerk entered a default against the City. On June 7, 1988, McMaster filed a motion for entry of default judgment as to Counts I and II.
 
 
 10
 On June 8, 1988, the district court on its own initiative entered a one-page order of dismissal. The court dismissed the petition as moot because McMaster "is not at present in the custody of any official of the defendants or the State of Michigan." The district court dismissed the section 1983 action "for failure to state a claim of deprivation of any federal constitutional right ... as it is undisputed that [McMaster's] license was in fact suspended on April 23, 1984, the date he was arrested ... and charged with the offense of driving while license is suspended." McMaster filed a notice of appeal on July 5, 1988, but this appeal was delayed because the district court denied a certificate of probable cause pursuant to 28 U.S.C. Sec. 2253 and Federal Rule of Appellate Procedure 22(b). However, in an order dated August 14, 1989, this court granted McMaster's application for a certificate of probable cause.
 
 
 11
 The principal issues on appeal are whether the district court erred by dismissing the habeas petition as moot, and whether the district court erred by dismissing the section 1983 action for failure to state a claim.
 
 II.
 A. Jurisdiction
 
 12
 The federal habeas statute requires that the habeas petitioner be "in custody" at the time his petition is filed. Maleng v. Cook, 109 S.Ct. 1923, 1925 (1989) (per curiam); 28 U.S.C. Sec. 2241(c)(3); 28 U.S.C. Sec. 2254(a). A habeas petitioner is not required to be physically confined in order to satisfy the custody requirement. However, the Supreme Court has never held "that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed." Maleng, 109 S.Ct. at 1925 (emphasis in original). Moreover, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Id. at 1926.
 
 
 13
 McMaster was in custody at the time he filed his original petition because he was subject to a court order to report to jail to serve the remainder of his sentence. Release on personal recognizance pending execution of a sentence constitutes custody. Hensley v. Municipal Court, 411 U.S. 345, 349-51 (1973). However, when McMaster filed his amended complaint on May 4, 1988, he was no longer in custody because he had fully served his sentence by that date. Therefore, it is necessary to decide whether the amended complaint satisfies the custody requirement.
 
 
 14
 The rules governing section 2254 cases are silent on whether a petition may be amended. However, 28 U.S.C. Sec. 2242 states that a petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings. Rule 15 provides that a party may amend his pleading "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). Otherwise, a party may amend his pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Id.
 
 
 15
 In the present case, McMaster filed the amended complaint without requesting leave of the court to do so. However, since no responsive pleading had been filed, McMaster was entitled to amend his petition once as a matter of course pursuant to Rule 15(a). Therefore, amendment of the petition was proper, and the amendment relates back to the date the original habeas petition was filed for purposes of satisfying the custody requirement.
 
 
 16
 The City of Troy argues that it is not a proper respondent because McMaster was not in the City's custody when he filed the petition. Therefore, the City contends that a writ of habeas corpus cannot issue against it. The City of Troy asserts that the proper respondent is either the circuit court judge who ordered McMaster to return to jail or the Sheriff of Oakland County, who had custody of McMaster upon his arrival at the jail.
 
 
 17
 The federal habeas corpus statute requires that a habeas petition allege the name of the person who has custody of the petitioner. 28 U.S.C. Sec. 2242. The Ninth Circuit has held that the failure to name a proper respondent requires dismissal of a habeas petition for lack of jurisdiction. See Olson v. California Adult Auth., 423 F.2d 1326 (9th Cir.), cert. denied, 398 U.S. 914 (1970) (per curiam) (citing Morehead v. California, 339 F.2d 170 (9th Cir.1964)). On the other hand, the Fifth Circuit has held that the "[f]ailure to name a proper respondent is a procedural rather than a jurisdictional defect, and it may be corrected by amendment of the petition." West v. Louisiana, 478 F.2d 1026, 1029 (5th Cir.1973), vacated in part on other grounds, 510 F.2d 363 (5th Cir.1975) (en banc) (per curiam). In West, the court noted that although the petitioner did not name the proper respondent, he did identify his place of detention in the body of the petition, and the court concluded that this was sufficient to satisfy section 2242. Id. at 1029-30.
 
 
 18
 We find West to be persuasive. Like the petitioner in West, McMaster failed to name the proper respondent, but his original and amended complaints did identify his custodian and the place of his incarceration. The allegation in the body of the petition satisfies the requirement of section 2242. West, 478 F.2d at 1030. Were we to grant the writ of habeas corpus, we would first notify the proper respondent and allow him an opportunity to be heard. Reimnitz v. State's Attorney, 761 F.2d 405, 409 (7th Cir.1985). However, because we are not inclined to grant the writ, "there is no purpose in spinning out this proceeding further." Id.
 
 B. Exhaustion
 
 19
 At oral argument we raised the issue of exhaustion and ordered the parties to brief the issue. McMaster asserts that he has satisfied the exhaustion requirement. The City argues that McMaster failed to exhaust available state remedies and did not fairly present the substance of his federal constitutional claim to the state courts. However, "exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation on the power of the court." Prather v. Rees, 822 F.2d 1418, 1421 (6th Cir.1987). "Because [McMaster's] petition is so plainly meritless, addressing the merits of his claim will not offend federal-state comity." Id. at 1422. Therefore, regardless of whether McMaster exhausted his state remedies, we exercise our discretion to reach the merits of his petition.
 
 C. Mootness
 
 20
 The district court's order of dismissal states that the petition is denied "as moot, as it is undisputed that [McMaster] is not at present in the custody of any official of the defendants or the State of Michigan." McMaster correctly argues that his petition did not become moot merely because he completed his sentence while the petition was pending in the district court. In Carafas v. LaVallee, 391 U.S. 234, (1968), "the Supreme Court recognized that, because significant collateral consequences flow from a criminal conviction, a habeas petition is not mooted merely by the petitioner's release from custody." Green v. Arn, 839 F.2d 300, 301 (6th Cir.1988), cert. denied, 109 S.Ct. 847 (1989). So long as the petitioner was in custody at the time he filed the petition, his release from custody while the petition is pending does not make the petition moot. Therefore, the district court erred by dismissing the habeas petition as moot.
 
 D. Habeas Petition
 
 21
 Because the district court dismissed the habeas petition as moot, there has not been a hearing on the merits of McMaster's claim. However, McMaster argues that we should address the merits of his petition and grant the writ of habeas corpus vacating his conviction for driving with a suspended license. Because McMaster's petition is plainly meritless, disposing of his claim on this appeal is the most efficient use of judicial resources. See Prather v. Rees, 822 F.2d 1418, 1422 (6th Cir.1987).
 
 
 22
 McMaster argues that the June 19, 1985, court order setting aside his license suspension eliminated an essential element of the crime for which he was convicted on January 9, 1985. Although his license suspension was set aside five months after his conviction, McMaster asserts that the order should have retroactive application so as to void his conviction. McMaster contends that the circuit court order had the effect of forever extinguishing his license suspension for any and all purposes. Therefore, McMaster concludes that his conviction must be vacated because the essential element of a valid license suspension cannot be established.
 
 
 23
 The elements of driving with a suspended license are (1) the defendant's license has been suspended, (2) the defendant has been notified of the suspension, and (3) the defendant operated a motor vehicle upon a public highway while his license was suspended. City of Troy v. McMaster, 154 Mich.App. 564, ----, 398 N.W.2d 469, 472 (1986). McMaster's license was suspended on the date he was stopped and arrested, and he had notice of the suspension. The Secretary of State has statutory authority to suspend a driver's license, and McMaster did not challenge the Secretary of State's suspension of his license until after his arrest. See Mich.Comp.Laws Ann. Sec. 257.625(10) (Supp.1990). Thus, the elements of driving with a suspended license were present at the time of McMaster's arrest, and the subsequent revocation of McMaster's license suspension does not change the fact that he was driving with a suspended license. To give retroactive application to the order vacating McMaster's license suspension would validate a clear violation of the law. Therefore, we hold that McMaster's conviction for driving with a suspended license was valid and did not violate his constitutional rights, and we deny the habeas petition.
 
 E. Section 1983 Claim
 
 24
 The district court dismissed McMaster's section 1983 claim "for failure to state a claim of deprivation of any federal constitutional right by defendants acting under color of state law." McMaster contends that the City of Troy violated his constitutional rights by opposing his efforts to set aside his conviction for driving with a suspended license, thereby resulting in his illegal incarceration. McMaster argues that the city attorney for the City of Troy acted under color of state law, and he contends that the City is liable under section 1983 because the city attorney occupies a final decisionmaking position and he made a deliberate choice to oppose McMaster's efforts to have his conviction set aside. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).
 
 
 25
 When reviewing the dismissal of an action for failure to state a claim, all well-pleaded facts must be taken as true, and the dismissal will be upheld only if there is "no set of facts which would entitle the plaintiff to recover." Hammond v. Baldwin, 866 F.2d 172, 175 (6th Cir.1989). In Monell v. New York City Dept. of Social Services, 436 U.S. 658, (1978), the Court held that a municipality may be liable under section 1983 for "deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature....' " Pembaur v. City of Cincinnati, 475 U.S. 469, 471 (1986). A municipality may be held liable only for a deliberate course of action ordered by officials having final decisionmaking authority. Id. at 483. Moreover, there must be a causal connection between the policy and the constitutional violation. City of Oklahoma City v. Tuttle, 471 U.S. 808, 822-24 (1985).
 
 
 26
 In Coogan v. City of Wixom, 820 F.2d 170, 176 (6th Cir.1987), we delineated the plaintiff's burden in a section 1983 action against a municipality:
 
 
 27
 If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy.
 
 
 28
 Id. (quoting Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir.1984) (en banc), cert. denied, 472 U.S. 1016 (1985)). McMaster's claim fails to meet this standard.
 
 
 29
 Accepting the allegations of McMaster's complaint that the city attorney is a policymaking official and that he pursued a policy to oppose McMaster's efforts to set aside his conviction, the causal connection between the policy and the constitutional deprivation is lacking. Illegal incarceration is the constitutional deprivation complained of by McMaster. McMaster was incarcerated pursuant to an order of the Oakland County Circuit Court after it rejected his attempt to set aside his conviction for driving with a suspended license. Therefore, the City cannot be liable because its policy did not cause the alleged constitutional deprivation. See Polk County v. Dodson, 454 U.S. 312, 326 (1981).
 
 
 30
 Moreover, even were we to assume that McMaster satisfied the Coogan standard, we would dismiss his claim for failure to establish a constitutional violation. McMaster's claim is properly characterized as one of malicious prosecution, and he fails to establish a section 1983 claim because "[t]he alleged injury caused by the city's prosecution of [McMaster] did not result from a violation of the Constitution or laws of the United States." Coogan, 820 F.2d at 174. "Only when 'the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension' does Sec. 1983 provide a remedy for a claim of malicious prosecution." Id. at 175 (quoting Dunn v. State of Tennessee, 697 F.2d 121, 125 (6th Cir.1982), cert. denied, 460 U.S. 1086 (1983)).
 
 III.
 
 31
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 32
 MERRITT, Chief Judge, dissenting.
 
 
 33
 I would not reach the merits of the federal constitutional issue presented in this habeas corpus case because it is plain that the petitioner has not exhausted his state remedies as required under Sec. 2254 of Title 28, United States Code. Section 2254(b) provides that an application for a writ of habeas corpus should not be heard in federal court "unless it appears that the applicant has exhausted the remedies available in the courts of the state," or that there is "an absence of available state process." Section 2254(c) explains that "an applicant shall not be deemed to have exhausted the remedies available in the courts of the state ... if he has the right under the law of the state to raise, by any available procedure, the question presented."
 
 
 34
 Despite the fact that our Court sees this as a simple case, we are not authorized by statute to waive the exhaustion requirement. The state court should be given an opportunity to consider the question before we reach it. The state court may choose a different answer to the problem, or may develop facts which put a new light on the question. For reasons of comity and prudence--as well as for the reason that the language of the statute is mandatory--we should decline the petitioner's request that we reach the merits at this point. For me it is important to maintain the discipline of exhaustion of state remedies. If the state has corrective processes available--and there is no question about the availability of such processes in this case--we should review the federal question only after a record has been made in state court and the state court has had an opportunity to apply its wisdom to the question.
 
 
 35
 Accordingly, I would reverse and remand the case to the district court for dismissal of the petition for failure to exhaust state remedies pursuant to Sec. 2254. I would, therefore, not reach the merits of the issue presented.