*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0377p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANTONIO MENDOZA,

  *Petitioner-Appellant,*

  *v.*

MARY BERGHUIS, Warden,

  *Respondent-Appellee.*

No. 07-1115

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-10029—David M. Lawson, District Judge.

Argued: September 15, 2008

Decided and Filed: October 15, 2008

Before: GILMAN, KETHLEDGE, and ALARCÓN, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Mary Cole Mertz, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellant. Andrew L. Shirvell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Mary Cole Mertz, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Antonio Mendoza, Lapeer, Michigan, pro se.

---

## OPINION

---

KETHLEDGE, Circuit Judge. Antonio Mendoza appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, after his conviction in Michigan state court of assault with intent to commit murder, malicious destruction of property, carrying a concealed weapon, and possession of a firearm during the commission of a felony. During his trial, Mendoza was restrained in leg shackles that were not visible to the jury. He claims these shackles violated his constitutional rights because, he says, the jury likely knew he was wearing them. We affirm the district court's denial of the writ.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

I.

On August 15, 1998, as Chris Mehney drove home from grocery shopping, Antonio Mendoza intentionally crashed his vehicle into hers, causing it to run off the road into a ditch. Mehney escaped from her car and fled from Mendoza on foot. He caught up with her, twice hit her with the butt of a gun, and then shot her in the face. Mehney again tried to run, but Mendoza shot her several more times. She survived the attack.

Mendoza was later apprehended and tried in Michigan state court for the assault. At the county sheriff's recommendation, the court determined that Mendoza should wear leg shackles during trial. According to counsel for the State, the sheriff deemed Mendoza a flight and security risk based on "a series of incidents" that had occurred during Mendoza's incarceration. Although the court acknowledged the sheriff's recommendation on the record, it did not otherwise cite any specific basis for its shackling decision.

The court concealed Mendoza's shackles from the jury, however, by skirting both counsel tables with brown paper for the duration of the trial. In addition, the court ordered the deputies transporting Mendoza to bring him in and out of the courtroom via a "back way" to "make sure that he is not unduly exposed to the jury." The court also permitted Mendoza to testify unshackled.

Mendoza does not allege the jury saw him in leg shackles during trial. He does allege–as he alleged in the trial court–that, on the fourth day of trial, four jurors briefly observed him in a hallway wearing both hand and foot shackles as he was transported to the courtroom from jail. His counsel moved for a mistrial, arguing that even the brief sight of Mendoza in shackles unfairly prejudiced his defense.

The trial court denied the motion, noting among other things that Mendoza himself had already testified that he was in jail:

> We have taken every step. We have both tables are [sic] draped. We – when he testified, there was some provision made to allow Mr. Mendoza to draw his sketch then to be on the stand without manacles. Deputies were present.
>
> His own statements indicate that he is in the local county establishment run by the sheriff's department and I don't know what the prejudice would be other than the fact that he is lodged. And by his statement and by the statement of the expert produced by the defense, that is common knowledge before the jury.

The court then offered to consider a curative instruction to the jury, though it is unclear from the record whether such an instruction was given.

The jury found Mendoza "guilty but mentally ill" on two counts of assault with intent to commit murder. The jury also found Mendoza guilty of malicious destruction of property over $100, carrying a concealed weapon, and possession of a firearm during the commission of a felony. His numerous attempts to challenge his convictions in the Michigan appellate courts were unsuccessful.

Mendoza thereafter filed a habeas petition with the United States District Court for the Eastern District of Michigan, alleging 16 putative grounds for relief. Among them was that he was "denied a fair trial in violation of the U.S. Constitution, Amendments V and XIV, when he was presented to the jury in leg irons, despite the fact that he posed no threat of violence, flight or disruption to the court[.]"

The district court denied the petition on January 4, 2007. Mendoza filed a notice of appeal and a motion for certificate of appealability as to his 16 claims for relief. The district court granted the motion as to the shackling claim, but denied a certificate as to all the others.

II.

A.

We review *de novo* the district court's decision to deny the writ of habeas corpus. *Ruimveld v. Mirkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs whether the writ may be granted here. AEDPA's relevant provision is 28 U.S.C. § 2254(d)(1), which states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of State court shall not be granted with respect to any claim that was adjudicated on the merits in a State court unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]

The "contrary to" and "unreasonable application" clauses in this section have "independent meaning[.]" *Williams v. Taylor*, 529 U.S. 362, 404 (2000). For purposes of this section, a state court's decision is "contrary to" clearly established federal law when the decision is "substantially different from the relevant precedent of [the United States Supreme] Court." *Id.* at 405. This clause applies when a state court, in essence, disagrees with the Supreme Court as to either the answer to a question of law or the result that should obtain under a particular set of facts. *See id.* at 405-06.

"Unreasonable application" has been harder to define. The Supreme Court instructs that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. This test requires more than mere error; "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Id.* at 411. Indeed even "clear error" in the state court's application of federal law is not enough. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness").

What is required, then, is something more than a close question as to how federal law should have been applied in a particular case. *See, e.g., Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding, in a capital case where defense counsel waived summation for fear of a strong rebuttal by the prosecution, that "we cannot say that the state court's application of *Strickland's* attorney-performance standard was objectively unreasonable"). What is required, instead, is something more like an "obvious failure" properly to apply clearly established federal law. *Williams*, 529 U.S. at 416 (O'Connor, J., concurring).

Finally, what qualifies as "clearly established law, as determined by the Supreme Court of the United States," for purposes of § 2254(d)(1), is itself clear. This phrase refers only "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412.

B.

1.

Mendoza claims the Michigan state courts erred, to the requisite degree, in holding that his due-process rights were *not* violated by the circumstances in which he was shackled at trial. As an initial matter, we must determine whether Mendoza relies on clearly established law, as determined by the Supreme Court as of the time of the relevant state-court decisions. *Id.*

We conclude that he does. Mendoza relies primarily on the Supreme Court's decision in *Deck v. Missouri*, 544 U.S. 622 (2005). There, on direct review, the Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629.

*Deck* came down in May 2005, well after all of the relevant state-court decisions here. That would normally preclude Mendoza from relying upon the case in seeking habeas relief. But our court has twice held that the principles underlying *Deck* were, in fact, clearly established by the Supreme Court before its decision in *Deck*. *See Lakin v. Stine*, 431 F.3d 959, 963 (6th Cir. 2005); *Robinson v. Gundy*, 174 F. App'x 886, 893 (6th Cir. 2006) (unpublished). In so holding in each case, we noted that the *Deck* Court itself had stated that "'[t]he law has long forbidden routine use of visible shackles during the guilt phase'" of a criminal trial. *Lakin*, 431 F.3d at 963 (quoting *Deck*, 544 U.S. at 626); *Robinson*, 174 F. App'x at 893 (same). Per our precedent, therefore, we treat *Deck's* holding, *in toto*, as if it were clearly established as of the time of the relevant state-court decisions here.

The question, then, is whether the Michigan state courts' decisions with respect to Mendoza's shackling were "contrary to" *Deck* or an "unreasonable application" of it. 28 U.S.C. § 2254(d)(1). To answer that question, we must more closely examine *Deck* itself.

Carman Deck was convicted of capital murder. A sentencing phase followed, during which he was shackled, in plain view of the jury, with leg irons, handcuffs, and a belly chain. Deck was sentenced to death, and the Missouri Supreme Court affirmed. 544 U.S. at 624-25. The United States Supreme Court vacated the sentence, holding that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is justified by an essential state interest–such as the interest in courtroom security–specific to the defendant on trial." *Id.* at 624 (emphasis in original; quotation marks deleted).

*Deck's* facts and holding, therefore, concerned only *visible* restraints at trial. The Supreme Court was careful to repeat this limitation throughout its opinion. *See id.* at 630 ("*[v]isible* shackling undermines the presumption of innocence") (emphasis added); *id.* at 632 ("[d]ue process does not permit the use of *visible* restraints if the trial court has not taken account of the circumstances of the particular case") (emphasis added); *id.* at 633 ("courts cannot routinely place defendants in shackles or other physical restraints *visible to the jury* during the penalty phase of a capital proceeding"); *id.* at 635 ("[w]here a court, without adequate justification, orders the defendant to wear shackles *that will be seen by the jury*, the defendant need not demonstrate actual prejudice to make out a due process violation") (emphasis added).

For at least two reasons, this limitation precludes any determination that the Michigan state courts acted "contrary to" *Deck* in Mendoza's case. 28 U.S.C. § 2254(d)(1). First, the Michigan courts did not hold that visible shackling, absent the determination of necessity required by *Deck*, was permissible. To the contrary, the trial court did everything possible to *prevent* Mendoza's shackles from being visible to the jury. ("We have taken every step.") The Michigan courts thus did not "arrive[] at a conclusion opposite to that reached by [the Supreme] Court on a question of

law[.]" *Williams*, 529 U.S. at 413. Second, the facts here are not materially identical to those in *Deck*. Carson Deck's restraints were visible to the jury, whereas Mendoza's were not. That is a material difference. Consequently, the Michigan courts, in this case at least, did not "decide[] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*.

Nor were the Michigan courts objectively unreasonable in their application of (or, more precisely, their failure to apply) *Deck's* holding here. Mendoza's argument is that the jury likely suspected that the brown paper around each counsel's table was intended to conceal his leg restraints. Mendoza contends this suspicion would have been enhanced after several jurors observed him shackled in the courthouse hallway, while he was being transported to the courtroom. He therefore asserts he was prejudiced to the same extent that he would have been had his shackles been plainly visible to the jury during trial.

But the fact remains that Mendoza's restraints were *not* visible to the jury during trial. And the clearly established precedent upon which he relies–namely, *Deck*–is expressly limited to cases where the defendant's shackles *are* "visible to the jury" during trial. 544 U.S. at 629. Mendoza thus advocates an extension of *Deck*, rather than a straightforward application of it. That is not necessarily fatal to his claim; a state court may apply a precedent unreasonably by refusing to extend it to facts to which it obviously ought to apply. But the particular limitation that Mendoza seeks to overleap is one that the Supreme Court emphasized at least six times in *Deck*. And a limitation thus emphasized is one the state courts may honor, with relatively little fear of being found "objectively unreasonable" for doing so.

Moreover, it is not obvious that *Deck* should be extended to the particular facts present here. Mendoza testified *un*shackled before the jury, which may have rebutted an inference that he *was* shackled behind the brown paper. Moreover, that he testified unshackled renders inapposite at least part of *Deck's* rationale, namely, that shackles "can interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf." *Id*. at 630.

Finally, we do not think it especially significant that, according to Mendoza, several jurors saw him shackled while he was being transported to the courtroom. Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things. *See, e.g., United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991) ("We have distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse"). As the district court observed, "[i]t is *reasonable* for law enforcement officers to transport custodial criminal defendants to and from courthouses across the country with restraints." (Emphasis added.) And jurors may well *expect* criminal defendants–at least ones charged with the kind of conduct at issue here–to be restrained during transport to the courtroom. That several jurors may have seen Mendoza shackled during transport, therefore, would not necessarily suggest to them that he was shackled in the courtroom as well.

None of this is to say that *Deck* obviously should *not* be extended to these facts. But it is to say that this case presented the Michigan courts with a close question. And because the question was close, we are not free to hold that their resolution of it was objectively unreasonable. The district court was correct to deny habeas relief on this ground.

## 2.

Mendoza's remaining claim is that hallway-viewing incident–in which several jurors allegedly observed him shackled during transport–amounted to a stand-alone violation of his constitutional rights. As Mendoza himself concedes, however, the Supreme Court has not held that

a defendant's constitutional rights are violated when jurors see him shackled during transport to or from the courtroom. (There is, incidentally, authority from our court to the contrary. *See, e.g., Moreno*, 933 F.2d at 368.) Consequently, the predicate for his claim–"clearly established federal law, as determined by the Supreme Court of the United States"–is absent here. 28 U.S.C. § 2254(d)(1).

### III.

For these reasons, we affirm the district court's decision.