*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FRANK J. LAWRENCE, JR.,
　　　　　　　　　*Petitioner-Appellant,*

　　　*v.*

48TH DISTRICT COURT,
　　　　　　　　　*Respondent-Appellee.*

No. 07-1094

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72701—Paul D. Borman, District Judge.

Argued: December 12, 2008

Decided and Filed: March 24, 2009

Before: KENNEDY and BATCHELDER, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Edward J. Christensen, LAW OFFICE, East Lansing, Michigan, for Appellant. Michael L. Updike, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellee. **ON BRIEF:** Edward J. Christensen, LAW OFFICE, East Lansing, Michigan, for Appellant. Mark S. Roberts, William P. Hampton, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellee.

　　　KENNEDY, J., delivered the opinion of the court, in which BATCHELDER, J., joined. THAPAR, D. J. (p. 15), delivered a separate concurring opinion.

_____

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge.  Frank J. Lawrence, Jr., filed a petition for a writ of habeas corpus[1] in federal district court after the 48th District Court in Bloomfield Township, Michigan convicted him of interference with a police officer in the discharge of his duties.[2]  The district court denied Lawrence's petition.  For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

The Bloomfield Township Ordinance under which Lawrence was convicted, No. 137, § 16.01(a), titled "Interference with Police Department," provides:

> No person shall resist any police officer, any member of the police department or any person duly empowered with police authority while in the discharge or apparent discharge of his duty, or in any way interfere with or hinder him with the discharge of his duty.

Lawrence's conviction was for circumstances that took place on August 19, 2000. Lawrence's brother, Christian Lawrence, called 911 to report that his father, Frank Lawrence, Sr., had struck him with a board.  He reported that three people were in the house, Lawrence, Lawrence's father, and himself.  The police arrived at the house and looked in the doorway to see that Christian was in the home holding his eye.  Christian stepped outside where paramedics tended to him.  Police next ordered Lawrence's father to exit the home, at which point he was arrested.  Additional officers arrived on the scene and inquired as to whether anyone else was inside of the home.  The officers knew that Lawrence remained inside the home, but did not know who else might also be inside. An officer called to Lawrence to tell him to step outside the home pursuant to the department's General Order 95-40B which directed police officer response to domestic

———————————

[1]Pursuant to 28 U.S.C. § 2254.

[2]Pursuant to Bloomfield Township Ordinance No. 137, § 16.01(a).

violence calls.  Lawrence refused to exit, stating, "Fuck you," in addition to citing some case law, and demanding that the officers obtain a warrant before entering.  The officer informed Lawrence of the need to check for additional suspects, victims, or evidence, but Lawrence refused to allow entry into the home, and blocked the door by standing in front of it.  The officer then pulled Lawrence out onto the porch, entered to conduct a sweep of the home, and with Christian's help retrieved the weapon, a board.  Lawrence was then placed under arrest.

Lawrence was arraigned on September 11, 2000 in the 48th District Court.  On October 4, 2000, in federal district court, Lawrence brought a 42 U.S.C. § 1983 suit with pendent state law claims against Bloomfield Township, police officers at the scene of the incident, the police chief, and the township supervisor for the arrest.  He then filed a motion in federal district court for a preliminary injunction, seeking to enjoin the enforcement of the ordinance against him in state court.  The district court denied the injunction and stayed the proceedings on the remaining claims in the district court pending the resolution of the state prosecution.[3]  Lawrence then filed a motion to dismiss in the 48th District Court which Judge Edward Avadenka denied with an opinion dated February 28, 2001.

On April 2, 2001, in the Oakland County Circuit Court, Lawrence sought leave to appeal the denial of his motion to dismiss and to enjoin the state court prosecution.  Circuit Judge Rae Lee Chabot denied the leave to appeal in part on the merits and in part on ripeness grounds in an opinion dated August 15, 2001.  The Michigan Court of Appeals and the Michigan Supreme Court both denied Lawrence leave to appeal the decision as well on October 8, 2001, and April 5, 2002, respectively.

Lawrence was found guilty following a jury trial in the 48th District Court on April 8, 2002.  On June 26, 2002, Judge Avadenka sentenced Lawrence to 12 months non-reporting probation in addition to 500 hours of community service.  In the same

---

[3]The defendants eventually won on summary judgment on those claims in the district court  and we affirmed that decision.  *See Lawrence v. Bloomfield Twp.*, Nos. 05-2511/07-1071, 2008 WL 647163 (6th Cir. March 7, 2008).

proceeding, Judge Avadenka recused himself. Judge Charles Bokos was assigned the case. On January 17, 2003, Judge Bokos denied Lawrence's motion for a new trial on his criminal conviction. Judge Bokos released Lawrence on personal bond pending the resolution of Lawrence's appeal. Lawrence appealed the denial of a motion for a new trial to the Oakland County Circuit Court, where Circuit Judge Colleen O'Brien affirmed the denial of a motion for a new trial on February 25, 2004. The Michigan Court of Appeals and Supreme Court both denied Lawrence leave to appeal Judge O'Brien's decision on July 26, 2004 and June 30, 2005, respectively.

On July 8, 2005, Lawrence filed this petition for a writ of habeas corpus in federal district court. At that time, Lawrence had not yet been sentenced by Judge Bokos which did not occur until December 28, 2005. Judge Bokos gave Lawrence a monetary-only penalty. Lawrence's habeas petition was denied by the district court on December 19, 2006. The denial is the subject of this appeal.

## ANALYSIS

A.     Standard of Review

We review the district court's denial of the requested writ of habeas corpus de novo. *Mendoza v. Berghuis*, 544 F.3d 650, 652 (6th Cir. 2008).

We will grant a writ of habeas corpus if and only if "the judgment of [the] State court . . . with respect to any claim that was adjudicated on the merits . . . (1) resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d). Lawrence argues that this standard that normally governs habeas petitions should not govern here because Judge O'Brien declined to opine on a constitutional issue and instead relied upon Judge Chabot's determination of that issue. Br. at 19. Judge O'Brien concluded that Judge Chabot's decision denying leave to appeal held that exigent circumstances existed to legitimize warrantless entry into Lawrence's home, and that holding constituted the law of the case. Since Judge

Chabot's determination of the constitutional issue of exigency occurred in her denial of Lawrence's leave to appeal, Lawrence's argument goes, Judge O'Brien's decision does not deserve deferential review because "denials of leave to appeal do not constitute rulings on the merits of a case," Br. at 19 (quoting *People v. Hines*, 88 Mich. App. 148, 152 (1979)), such that the claim had not been adjudicated in a State court on the merits according to 28 U.S.C. § 2254(d).  In other words, Lawrence argues that no Michigan court adjudicated the issue of exigency on the merits because Judge O'Brien considered the issue to be law of the case and did not to go the merits, and Judge Chabot's determination as part of a leave to appeal is not a ruling on the merits of a case.

Lawrence's argument fails because Judge Chabot denied leave for appeal for lack of merit in Lawrence's claims which included the issue of exigency.  Under Michigan law, a court can consider itself bound by a decision rendered in the denial of a leave to appeal as law of the case where the denial of the leave to appeal came on the merits of the case.  *People v. Collier*, No. 253151, 2005 WL 1106501, at *1 (Mich. Ct. App. May 10, 2005) (citing *People v. Hayden*, 132 Mich. App. 273, 297 (1984)) ("Although denial of an application for leave to appeal where the court expresses no opinion on the merits does not implicate the law of the case doctrine, this Court has consistently held that denial of an application 'for lack of merit in the grounds presented' is a decision on the merits of the issues raised, which precludes subsequent review of those issues pursuant to the law of the case doctrine.") (internal citations omitted); *cf. People v. Shook*, No. 233346, 2002 WL 31379664, at *2 (Mich. Ct. App. Oct. 22, 2002) (citing *People v. Phillips*, 227 Mich. App. 28, 35 (1997)) ("a denial of leave to appeal by the Supreme Court, without explanation, is generally not considered a decision on the merits and is not precedentially binding").  Lawrence cites *Hines* for the general proposition that "denials of leave to appeal do not constitute rulings on the merits of a case," 88 Mich. App. at 152, which is indeed true, but with the caveat that denials of leaves to appeal based on lack of merit may constitute rulings on the merits of a case.

Judge Chabot, in her denial of Lawrence's leave to appeal, held that the likelihood that a piece of evidence, namely a board Lawrence's father purportedly used

to hit Christian, was inside the home provided the exigent circumstances necessary to permit the police officers into the home.  The court concluded with: "the Court finds [Lawrence's arguments regarding exigency] without merit."  Judge O'Brien considered Judge Chabot's decision a ruling on the merits which became the law of the case; similarly then, we must give Judge Chabot's decision due deference in accordance with the comity that habeas's deferential standard was meant to foster.  *See, e.g., Williams v. Taylor*, 529 U.S. 362, 368 (2000).  Therefore, the standard of review with respect to all of Lawrence's claims is that prescribed by 28 U.S.C. § 2254(d).  Justiciability issues are reviewed de novo.

B.      In Custody

28 U.S.C. § 2254 provides that a court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States" (emphasis added).  Whether a habeas petitioner is "in custody" is determined at the time of the filing of the petition.  *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001) (citing *Carafas v. LaVallee*, 391 U.S. 234, 239-40 (1968)).  Actual physical custody is sufficient but not necessary to satisfy the custody requirement.  *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).  The writ of habeas corpus exists to allow a petitioner to attack and secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

On June 26, 2002, Judge Avadenka sentenced Lawrence to one year non-reporting probation in addition to 500 hours of community service and recused himself in the same proceeding.  On September 16, 2002, Judge Charles Bokos was assigned the case.  Judge Bokos released Lawrence on personal bond pending the resolution of Lawrence's appeal of the court's denial of his motion for a new trial.  By the end of June 2005, all of Lawrence's appeals had been resolved against him.  On July 8, 2005,

Lawrence filed this petition for a writ of habeas corpus in federal district court. On December 28, 2005, Judge Bokos sentenced Lawrence to a monetary-only penalty.[4]

At that time he filed his petition, Lawrence had been sentenced and then released on personal bond pending the resolution of his appeals. A habeas petitioner on a recognizance bond at the time of the filing of the habeas petition meets the custody requirement. *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (citing *Hensley v. Mun. Court*, 411 U.S. 345, 348-49 (1973)). In *McVeigh*, we held that a petitioner with a one-year probation sentence that had been stayed met the "in custody" requirement. *Id.* That case is on point here. However, we take this opportunity to further explain our reasoning in *McVeigh* where we relied on *Hensley* but without much explanation.

The Supreme Court in *Hensley* emphasized three points in holding that a habeas petitioner released of his own recognizance following the receipt of a prison sentence met the "in custody" requirement: (1) the personal recognizance bond subjected the prisoner to restraints not shared by the public generally, *Hensley*, 411 U.S. at 351; (2) the sentence that had been stayed involved incarceration, *id.* at 351-52; and (3) a petitioner still must exhaust his state remedies, *id.* at 353.

*Restraint on Liberty.* The Court in *Hensley* held that a person released on a personal recognizance bond "is subject to restraints not shared by the public generally." *Id.* at 351 (quoting *Jones*, 371 U.S. at 240) (internal quotation marks omitted). Such a person "cannot come and go as he pleases[–][h]is freedom of movement rests in the hands of state judicial officers[] who may demand his presence at any time and without a moment's notice" and punish "[d]isobedience [as] a criminal offense." *Id.* That is the case here. Generally, we have interpreted the Supreme Court's decisions in *Hensley* and *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984), to mean that personal recognizance bonds categorically suffice as restraints on liberty. *See Malinovsky v. Court of Common Pleas*, 7 F.3d 1263, 1265 (6th Cir. 1993) (citing *Lydon*, 466 U.S. at

---

[4]The crime for which Lawrence was convicted provided for the possibility of a prison sentence.

294); *McMaster v. City of Troy*, 911 F.2d 733, 1990 WL 116540, at \*3 (6th Cir. Aug. 13, 1990) (unpublished); *McVeigh*, 872 F.2d at 727 (citing *Hensley*, 411 U.S. at 348-49).

*Stayed Sentence*.  In *Hensley*, the Court looked to the severity of the stayed sentence's restraints on liberty.  There, the petitioner received a stay of the execution of his prison sentence.  411 U.S. at 346.  Therefore, his incarceration was not "a speculative possibility" because, but for the stay, authorities could "seize him." *Id.* at 352.  Here, the stayed sentence involved probation and 500 hours of community service.[5] Probation's restraints on liberty suffice to satisfy the "in custody" requirement.  *See Lewis v. Randle*, 36 F. App'x 779, 2002 WL 343397, at \*1 (6th Cir. Mar. 4, 2002) (unpublished); *McVeigh*, 872 F.2d at 727 (stayed one-year probation sentence sufficed for "in custody" requirement); *see also Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005); *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (citing *Mabry v. Johnson*, 467 U.S. 504, 507 n.3 (1984)); *Olson v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992); *Tinder v. Paula*, 725 F.2d 801, 803 (1st Cir. 1984); *Duvallon v. Florida*, 691 F.2d 483, 485 (11th Cir. 1982).  The same is true for community service.  *See Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998); *Barry v. Bergen County Prob. Dep't*, 128 F.3d 152, 159-62 (3d Cir. 1997) ("an individual who is required to be in a certain place–or in one of several places–to attend meetings or to perform services, is clearly subject to restraints on his liberty not shared by the public generally").  Together, probation and an onerous community service requirement imposes significant restraints on liberty.  In addition, should Lawrence have violated the terms of his probation or community service, the court could revoke his probation and incarcerate him.

The parties have had some dispute over whether Judge Bokos vacated Judge Avadenka's sentence and re-sentenced him at the later time, or whether Judge Bokos merely amended Judge Avadenka's sentence.  First, even if Judge Bokos had vacated Judge Avadenka's sentence, we are unable to find any evidence in the record to support the proposition that Judge Bokos vacated the sentence *before* Lawrence filed his habeas

---

[5]That the court imposed non-reporting probation is a distinction without a difference, as both give a court supervisory authority over a petitioner which allows it to revoke probation and incarcerate the petitioner should he violate the probation's terms.

petition. Second, the court in *Hensley* focused on "the conditions imposed on petitioner as the price of his release," not the sentence that had been stayed. 411 U.S. at 348. As in *Hensley*, the "petitioner remains at large only by the grace of a stay." *Id.* at 351. The state court here could order Lawrence to appear for sentencing at any time, which it did on December 28, 2005. For both the petitioner in *Hensley* and the petitioner here, the failure to obey the terms of the personal recognizance bond subjects the petitioner to arrest and incarceration. *See id.* at 348.

*Exhaustion*. The *Hensley* court emphasized that it did not intend to "open the doors of the district courts to . . . all persons released on bail or on their own recognizance"; only in those cases where a petitioner released on his own recognizance has "exhausted all available state court opportunities" does a federal court have jurisdiction to decide. *Id.* at 353. That is the case here. Altogether, a petitioner who has had a sentence of probation and community service stayed and exhausts his state court opportunities meets habeas's "in custody" requirement.

C.      Mootness

Since the filing of the petition Judge Bokos has imposed a sentence on Lawrence, giving him a monetary-only penalty. The penalty, as a direct consequence of Lawrence's conviction, preserves Lawrence's stake in this case; therefore, the penalty keeps Lawrence's habeas petition from becoming moot. *Port v. Heard*, 764 F.2d 423, 427 (5th Cir. 1985). Because the penalty, as a direct consequence of the conviction, keeps the controversy live, we need not address Lawrence's arguments that a collateral consequence of his conviction, namely his rejection from the Michigan state bar, helps him avoid mootness.

D.      Overbreadth and Vagueness Challenges

Lawrence's arguments with regard to overbreadth and vagueness fail because he cannot demonstrate that the state courts in his case rendered decisions contrary to "clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d). The "as determined by the Supreme Court of the United

States"-clause limits our analysis to those cases decided by the United States Supreme Court.  *Williams*, 529 U.S. at 381-82.  Lawrence lacks sufficient support for his arguments in United States Supreme Court decisions.

For overbreadth, *City of Houston v. Hill*, 482 U.S. 451 (1987), does not provide the clearly established federal law necessary to grant Lawrence's habeas petition.  While *Hill* did invalidate a statute prohibiting a person from ". . . in any manner oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty, . . .," 482 U.S. at 455, the court focused on the "interrupt" element of the crime, not the "in any manner" portion which shares similarity with the "in any way" part of the statute here.  *Id.* at 461.  That the law prohibited interruption meant that the law prohibited speech, as interruption suggested verbal interruption.  *Id.* at 460-61.  The ordinance here prohibits "resist[ing]," "interfer[ing]," and "hinder[ing]," none of which suggest speech, and on the contrary, suggest some kind of physical interference.  Without any other United States Supreme Court decisions to support his claim, Lawrence's overbreadth argument fails.

As for vagueness, Lawrence does not cite established Supreme Court precedent that supports his argument.  He relies on *Landry v. Daley*, 280 F. Supp. 968 (N.D. Ill. 1968), a federal district court case which does support his argument.  *Id.* at 972-73.  The court there held that the words and phrases "resist," "obstruct," "interfere," and "in the discharge of his duties" rendered the statute void for vagueness.  *Id.*  However, the case does not amount to "clearly established Federal law as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  The decision was not from the Supreme Court.  On the contrary, there is Supreme Court precedent that suggests that the statute is not vague.  The Court in *Cameron v. Johnson*, 390 U.S. 611 (1968), held that the words "obstruct" and "interfere" were not vague.  *Id.* at 616.  While the Court has not opined directly on the phrase "in the discharge of his duties" with respect to vagueness, in *Cox v. Louisiana*, 379 U.S. 559 (1965), the Court considered a picketing statute prohibiting the influencing of a court-related person "in the discharge of his duty," *id.* at 560, but did not include that phrase as part of its vagueness analysis, *id.* at 568-69, and

did not invalidate the law on vagueness or other grounds, *id.* at 568. Even assuming that the statute lacks a scienter requirement, that does not render a statute per se vague. *Staley v. Jones*, 239 F.3d 769, 791 (6th Cir. 2001) (citing *Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982)). "[T]he complainant must demonstrate that the law is impermissibly vague in all of its applications," which he has failed to do. *Vill. of Hoffman Estates*, 455 U.S. at 497. "[C]learly established Federal law" requires holdings of the Supreme Court to support the habeas petitioner's arguments. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Where such holdings are lacking and even militate against Lawrence's positions, we must decline to hold the ordinance void for vagueness.

E.     Ordinance Constitutionality As-Applied

Lawrence argues that the ordinance is unconstitutional as applied to him, because he was "within his constitutional right to protect the sanctity of his home" in not allowing the police officers to enter.[6] Br. at 32. He cites Supreme Court precedent to support his argument that a conviction for exercising a constitutional right would be unconstitutional. Br. at 33. However, the Michigan courts in this case determined that the police had exigent circumstances such that they had the right to enter Lawrence's home without a warrant. Lawrence's argument, then, boils down to whether the state courts, in determining that exigent circumstances existed, based their finding "on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d).[7]

The police officers responded to Christian's 911 call which reported that he had been assaulted by his father with a board and that there were three people in the house.

_____

[6] The record shows that Lawrence was "using his body to block the entrance to the door." J.A. at 357.

[7] Ordinarily, we do not recognize Fourth Amendment claims in Section 2254 actions if the state proceedings provided the petitioner a full and fair opportunity to litigate that claim. *See Stone v. Powell*, 428 U.S. 465, 489-90 (1976). Here, however, Lawrence does not argue that his conviction rests on evidence that should have been suppressed because it was obtained in violation of the Fourth Amendment. Instead, he argues that the judgment itself is unconstitutional because he was convicted for exercising his Fourth Amendment right to prevent the warrantless search of his home. A Fourth Amendment claim of this sort does not invoke the concerns raised in *Stone* about the application of the exclusionary rule on collateral review. Accordingly, in this limited context we may examine the state court's determination of whether exigent circumstances existed.

When the police arrived, Christian met the officers at the door of the home and then the officers ordered Lawrence's father out of the house.[8] The Michigan courts determined that exigent circumstances existed from the fact that the 911 call indicated that a crime of violence was perpetrated in the home, and therefore, the police could, without a warrant, enter the home to check for additional suspects, victims, and evidence. In particular, the record indicated that all three persons–Lawrence, Lawrence's father, and Christian, were inside of the house when the police arrived. The 911 call indicated domestic violence had taken place, and although Christian had indicated that three people were in the house, the officers could not be sure of that fact, nor could they be sure of whether any weapons were in the house. In domestic violence cases, the police want to be sure there are no other victims. Finally, the 911 call indicated that Lawrence's father had used a board to strike Christian, which the police intended to preserve as evidence.

The Michigan courts' determinations that exigent circumstances existed, then, are not unreasonable based on the facts in the record. In addition, no clearly established Supreme Court precedent indicates that the circumstances presented to the police did not permit them to enter into Lawrence's home without a warrant. *Cf. Thacker v. City of Columbus*, 328 F.3d 244, 254-55 (6th Cir. 2003) (holding exigent circumstances existed under similar circumstances).[9]

F.      Due Process

Lawrence argues that his due process rights were violated because: (1) "jurors were allowed to believe that demanding a warrant from police officers could constitute an interference"; and (2) "the jury instructions were in the nature of strict liability." For his part, the judge in this case gave the jury the following instructions:

---

[8]Lawrence does not contest these facts.

[9]Whether the police entered the home pursuant to a general order of the department in responding to domestic violence calls is irrelevant to the determination of whether exigent circumstances justified their entry.

The defendant has been charged with a violation of Section 16.01(A), a Bloomfield Township ordinance, entitled "Interference with the Police Department." The ordinance states: "No person shall resist any police officer, any member of the police department, or any person duly empowered with police authority, while in the discharge or apparent discharge of his or her duty or in any way interfere with or hinder him or her with the discharge of their duty."

To prove the elements of this crime, the prosecutor must show beyond a reasonable doubt that the defendant did resist a police officer in the course of his duty or interfere with or hinder that police officer while in the discharge or apparent discharge of his duty as a police officer.

"To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). An ambiguous instruction, such as above where the court did not give a direct instruction on intent that was erroneous, "violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Austin*, 126 F.3d at 846 (citing *Estelle*, 502 U.S. at 72-73 n.4). In other words, the state court's lack of giving the jury a direct instruction explicating intent is "subject to harmless-error analysis." *See Johnson v. United States*, 520 U.S. 461, 469 (1997).

The error was harmless here. The record shows plenty of evidence that Lawrence presented a physical hindrance in addition to his demands for a warrant and his recitation of case law upon which the jury could have convicted him for the crime at issue. While the jury instructions did not explicate in greater detail the intent element of the ordinance, there was no evidence in the record indicating that Lawrence did not possess knowledge with respect to the actus reus of the crime, that is, standing in front of the door to the home when the officers expressed their need to enter the home. The trial was sufficiently fair so as not to violate Lawrence's right to due process.

Finally, while due process may be violated by a jury instruction omitting an element of a crime, *Ho v. Carey*, 332 F.3d 587, 595 (9th Cir. 2003), it "does not *necessarily* render a criminal trial fundamentally unfair." *Neder v. United States*, 527

U.S. 1, 9 (1999).  The alleged error here is not of the structural sort that "vitiates *all* the jury's findings."  *Id.* at 11 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)).  As required on a habeas petition by 28 U.S.C. § 2254, the petitioner still needs to proffer clearly established Supreme Court precedent holding that the error here rises to a constitutional violation of due process.  That is where he fails.

For the foregoing reasons, we affirm the judgment of the district court denying Lawrence's request for a writ of habeas corpus.

---

**CONCURRENCE**

---

THAPAR, District Judge, concurring.  I concur in full with Judge Kennedy's excellent opinion.  I write separately, however, to point out the need to rein in the definition of "in custody."

28 U.S.C. § 2254 allows an individual to apply for a writ of habeas corpus if that individual is "in custody pursuant to the judgment of a State court . . . ."  If Congress had wanted to create a mechanism whereby criminal defendants could challenge a conviction if they faced any restriction on their liberty, including a possible summons, it was fully capable of doing so.  Instead, Congress—in an exercise of legislative prerogative—decided that habeas petitions could only be pursued by those defendants who are "in custody."  As these words have a plain meaning that clearly does not stretch so far as to cover individuals who are not in custody, but are merely subject to personal recognizance bonds, it would seem that the petitioner does not fit within the class of people who are capable of bringing a habeas petition.  Nevertheless, it appears that this Circuit's decision in *Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263 (6th Cir. 2003), compels the conclusion that petitioner was in custody for the purposes of filing a habeas petition.  *Id.* at 1265 (noting that Malinovsky was in custody "although he has been released on personal recognizance bond").  While there is nothing that this panel can do to bring the meaning of the term "in custody" back to its plain meaning, perhaps Congress or the Supreme Court should restore the proper definition by clarifying what exactly is meant by "in custody."  Such clarification is advisable because, in the words of Justice Blackmun, "the Court seems now to equate custody with almost any restraint, however tenuous.  One wonders where the end is." *Hensley v. Mun. Court*, 411 U.S. 345, 354 (1973) (Blackmun, J., concurring).